**Blanche E. RUBENSTEIN**

v.

**Archie L. KLEVEN.**

**Civ. A. No. 56-530.**

United States District Court
D. Massachusetts.

May 29, 1958.

See also 150 F.Supp. 47.

22. 1937, 67 App.D.C. 217, 91 F.2d 248.

23. Avery v. S. Kann & Sons Co., note 22 supra.

238

Erdheim & Armstrong, New York City, Louis Jacobs, Boston, Mass., for plaintiff.

Choate, Hall & Stewart, Richard Wait, Claude B. Cross, Boston, Mass., for defendant.

ALDRICH, District Judge.

■ This is an action for breach of contract. The alleged agreement having been oral, and it affirmatively appearing from the plaintiff's deposition that it was not memorialized in writing, the defendant moves for summary judgment upon its plea of the statute of frauds. The essential terms of the agreement in this connection are that the defendant was to pay the plaintiff $1,000 a month "in each and every month during the remainder of the plaintiff's natural life, in consideration of the plaintiff's agreement to devote all, or substantially all, of her time and attention to the defendant." (Further provisions are almost identical with the agreement alleged in Roth v. Patino, 185 Misc. 235, 56 N.Y.S.2d 853,

infra.) The plaintiff testified that the agreement was made in the state of New York, whose statute is accordingly controlling. Klaxon Co. v. Stentor Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Thomas G. Jewett, Jr., Inc., v. Keystone Driller Co., 282 Mass. 469, 185 N.E. 369, 87 A.L.R. 1298; Denney v. Williams, 5 Allen, Mass., 1. This statute includes any agreement which "by its terms is not to be performed within the year of the making thereof or the performance of which is not to be completed before the end of a lifetime." New York Personal Property Law, McKinney's Consol.Laws, c. 41, § 31(1). The plaintiff testified unequivocally that she was to render the agreed services to the defendant as long as he lived or as long as she lived, and he was to pay her $1,000 a month as long as she lived. On the record either this was the contract, or there was none. No question of quasi-contractual recovery is involved because admittedly the plaintiff performed no services for which she has not been compensated.

■ It seems clear that the agreement falls literally within the statute. There is no possible exception through its being terminated before the end of a lifetime by some expressed happening, such as the defendant going out of business. Cf. High v. Pritzker, Sup., 58 N.Y.S.2d 706, affirmed 269 App.Div. 1015, 59 N.Y.S.2d 57. In order to meet this the plaintiff contends that the lifetime clause was passed for the special purpose of preventing suits against the estates of promisors on oral contracts after it was too late for the decedent to testify. See Bayreuther v. Reinisch, 264 App.Div. 138, 141, 34 N.Y.S.2d 674, 677, affirmed 290 N.Y. 553, 47 N.E.2d 959. Except for this unsupported dictum, however, no such legislative history has been established. Even were I to indulge in this speculation, the typical contract which results in actions against estates is a service contract, and the only difference between this usual agreement and the one at bar relates to the time of payment, normally alleged to have been due at death, or to be testamentary in character. In the case at

bar plaintiff alleges that payments were to be made currently. I could never find under the language of this statute that such a distinction was determinative.

Even were plaintiff's inquiry as to the legislative intent pertinent I could not assume that her suggestion comprised the sole contemplated purpose. It would be equally open to suggest that the lifetime clause was to terminate what might be regarded as an anomalous situation whereby lifetime contracts, which may be entered into in expectation of many years' duration, are without the ordinary statute applicable to far shorter agreements merely because of the everpresent possibility of untimely death. Williston, Contracts, § 495; Kent v. Kent, 62 N.Y. 560. A legislature might well regard a writing as desirable for both contracts.

However, I do not consider any speculation to be in order as to the meaning of this clause. Meltzer v. Koenigsberg, 302 N.Y. 523, 99 N.E.2d 679. In that case the court not only stated that the statute was unambiguous, but specifically held it was not limited to the lifetime of the promisor, which it would have to be if plaintiff's suggestion of the protection of defenseless estates as its sole purview were to be accepted.

There being no recognizable restriction in the scope of the statute, defendant's motion for summary judgment is granted. Roth v. Patino, 185 Misc. 235, 56 N.Y.S.2d 853, affirmed 270 App.Div. 927, 62 N.Y.S.2d 820, reversed on other grounds 298 N.Y. 543, 80 N.E.2d 673.*

* The plaintiff asserts that the reversal by the Court of Appeals rebuts the above conclusion. That would be so if it were a decision on the merits. This requires an examination into a question of New York practice. In the Special Term Patino filed a motion to dismiss, based, in part, on the statute of frauds, and his position was sustained. The Appellate Division affirmed without opinion. Roth appealed to the Court of Appeals. There it appeared that the defendant had died and that his personal representative had not been substituted. Roth moved for reversal pursuant to § 578 of the Civil Practice Act, and her motion was granted. Plaintiff herein claims that this was a decision on the merits. I think it clear that it was not. Not only did the court not write any opinion, on what would have been a troublesome and important question of

law if it were to interpret the statute of frauds other than literally, but there are earlier cases where disposition has been made under § 578 which demonstrate that the discretion exercisable thereunder relates to practice and not to substantive law. See, e. g., O'Esau v. E. W. Bliss Co., 224 N.Y. 701, 121 N.E. 362; Auerbach v. Commercial Capital Corp., 301 N.Y. 551, 93 N.E.2d 349; Bronheim v. Kelleher, 258 App.Div. 972, 16 N.Y.S.2d 898. Where it is appellee who fails to make the substitution that the above cases indicate is required before the court can pass on the merits, justice dictates that he should not benefit therefrom, and a procedural reversal rather than affirmance is in order. This is all that occurred here. See Cummings v. Brenci, 334 Mass. 144, 146, 134 N.E.2d 133.